UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>THREE MILLION SIX HUNDRED )<br>SIXTEEN THOUSAND, EIGHTY-THREE )<br>DOLLARS AND FIFTEEN CENTS )<br>($3,616,083.15) SEIZED FROM ACCOUNT )<br>7001177621 HELD AT COLUMBIA BANK )<br>IN THE NAME OF MED-TECH )<br>RESOURCE, LLC )<br>**Defendant** *in rem*.    ) | Civ. No. _____ |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by and through its attorneys, Donald E. Clark, Acting United States Attorney for the District of Maine, and Daniel J. Perry, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* brought to enforce the provisions of: (1) 18 U.S.C. §§ 981(a)(1)(C), 2323 and 984.  Section 981(a)(1)(C) provides for the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)," including 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 2320 (trafficking in counterfeit goods). Section 2323 provides for the forfeiture of "[a]ny property constituting or derived from any proceeds obtained directly or indirectly" as a result of a violation of 18 U.S.C. § 2320 (trafficking in counterfeit goods).  Section 984 provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense

that is the basis for the forfeiture shall be subject to forfeiture so long as the action is commenced within one year from the date of the offense.

## DEFENDANT *IN REM*

2. The defendant *in rem* consists of Three Million Six Hundred Sixteen Thousand, Eighty-Three Dollars and fifteen cents ($3,616.083.15) seized from account 7001177621 held at Columbia Bank in the name of Med-Tech Resource, LLC ("Med-Tech") pursuant to a seizure warrant issued by United States Magistrate Judge John H. Rich III on March 19, 2021. The defendant *in rem* was transmitted to the Government by Columbia Bank cashier's check #1396582 and received in Portland, Maine on March 23, 2021. Columbia Bank is headquartered in the State of Washington.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* to forfeit and condemn the defendant *in rem*. The Court has *in rem* jurisdiction over the defendant *in rem* under 28 U.S.C. § 1355(b). Venue is proper in this district: (a) pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred in this district; and (b) pursuant to 28 U.S.C. § 1395(b) because the defendant *in rem* is located in this district. The defendant *in rem* was deposited into the Treasury Suspense Account, where it remains.

## ALLEGATIONS OF FACT

4. Since February 2021, agents with Homeland Security Investigations (HSI), of the United States Department of Homeland Security, have been investigating allegations of counterfeit Personal Protective Equipment (PPE) being sold during the COVID-19 pandemic.

5. Between December 2020 and January 2021, the State of Maine's Division of Procurement Services sent by email two purchase orders (#2020103**423 and #20210115**610)

to Elevate Marketing Solutions, LLC ("EMS"), located in Raleigh, North Carolina, for the proposed purchase of 1,804,320 3M brand NIOSH N95 1860 and N95 1860S Particulate Respirator and Surgical Masks at an average unit cost of about $2.67 each. The total purchase cost for the masks was $4,814,499.23.   According to 3M, the manufacturer's suggested retail price for these specific masks is $1.27 each.  3M lists this price on their website to assist customers in identifying inflated prices.  The 3M website is:

https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf

6. EMS provided their banking information to the State of Maine in order to receive payment for the masks by wire.  To pay for the masks, and as directed by EMS, Maine sent four ACH (Automated Clearing House) transfers from Maine's bank account located at U.S. Bank, located in Columbus, Ohio to EMS's bank account (**********8392) at Coastal Federal Credit Union, located in Raleigh, North Carolina that were received according to EMS bank records as follows:

| Date | Wire Amount |
|---|---|
| 12/9/2020 | $2,285,136.00 |
| 1/20/2021 | $260,803.23 |
| 1/27/2021 | $1,449,840.00 |
| 2/1/2021 | $818,720.00 |
| Total | $4,814,499.23 |

7. Between December 23, 2020, and February 5, 2021, the State of Maine received shipments of 1,804,320 masks that were ordered from EMS and that appeared to the 3M Branded N95 Protective Masks that were ordered.  According to shipping documents, the masks were sent to Maine by Zhen Qi Trade Co Limited.  In early December 2020, a Maine representative learned in a phone call with EMS owner Neal Westphalen and Michael Modrich from Med-Tech that Med-Tech was in the supply chain with EMS for the masks.  He learned that the supply

process was as follows:  Maine issues a purchase order to EMS; EMS issues a purchase order to Med-Tech; Med-Tech issues a purchase order to Zhen Qi Trade Co Limited who caused the masks to be shipped to the State of Maine.

8.  According to EMS bank records, on the same day EMS received the ACH transfers from the State of Maine, EMS wired funds to Med-Tech's Account as follows:

| Date | Wire Amount |
| --- | --- |
| 12/9/2020 | $2,203,514.00 |
| 1/20/2021 | $236,103.23 |
| 1/27/2021 | $1,292,244.00 |
| 2/1/2021 | $809,538.00 |
|  | $4,541,399.23 |

9.  The balance in EMS's account immediately prior to each wire transfer from Maine was as follows:

| Date | Balance |
| --- | --- |
| 12/9/2020 | $22,773.71 |
| 1/20/2021 | $6,177.93 |
| 1/27/2021 | $12,226.12 |
| 2/1/2021 | $249,613.42 |

10.  As of February 28, 2021, the balance in the EMS account was $10,071.96.  On 3/18/2021, a Columbia Bank representative confirmed that the balance of Med-Tech's account was about $3.7 million.

11.   In early February, the State of Maine's Division of Procurement received notification from the National Recall Alert Center relating to counterfeit 3M masks.  The notice indicated that 3M N95 masks with certain model and lot numbers were at a high risk of being counterfeit. The model and lot numbers that were identified by the Alert Center matched those that the State of Maine procured.   Representatives from Maine provided photographs of the product that they received from EMS to the 3M COVID Fraud Response Team.  The 3M

COVID Fraud Response Team confirmed that the masks that Maine received from EMS were counterfeit.  3M confirmed that the masks were counterfeit in a letter to the State that provided:

    a. The printing on the respirators does not conform to the known characteristics of printing present on authentic 3M 1860 and 1860S respirators.

    b. The construction of the products examined does not conform to the known characteristics of authentic 3M 1860 respirators (Lots B20018, B20119 only).

    c. The packaging for the respirators contains multiple printing inconsistencies which readily distinguish it from authentic 3M 1860 and 1860S respirator packaging.

    d. The packaging bears counterfeit 3M security labels which do not conform to the known characteristics of authentic 3M security labels.

    e. The respirators bear lot codes that are known to be counterfeit lot codes.

12. In addition, HSI-Houston confirmed with 3M that Med-Tech was not an authorized 3M distributor.

13. According to their website (https://www.mtrsuperstore.com) Med-Tech is a distributor of medical supplies.  Michael Modrich is listed on the website under the "About Us" section as Founder and Chief Executive Officer of the company.  According to public criminal records, in May 2019, Modrich was convicted of wire fraud relating to Med-Tech, a medical supply company, and was sentenced to 1½ years in prison.  Records on file with the Oregon Secretary of State's Office include an Amended Annual Report filed by Med-Tech on December 16, 2020.  That report identifies the members of the company as Kendyl Modrich, Ramona Modrich, and Andrew Rogers.

14. An online search of records was conducted in the System for Award Management, a program within the U.S. General Services Administration. That database reflects individuals and entities that are or are not authorized to do business with the federal government. Those records reflect that Med-Tech has been ineligible to conduct business with the federal Government since September 8, 2020 and will be ineligible until September 8, 2023. In addition, Michael Modrich is ineligible for the same period.

15. HSI-Houston agents are investigating similar allegations involving Med-Tech, which resulted in a seizure of more than $1.6 million from the Med-Tech bank account at Columbia Bank.

16. On March 11, 2021, EMS emailed a letter to the State of Maine, along with various attachments, demanding full payment for the remaining balance due for the masks. An HSI agent provided copies of the letter and attachments to 3M to review. A representative of 3M provided the following information regarding the documents:

| Document Description | 3M Response |
|---|---|
| Bill of Lading and Certificate of Lot Conformance | The documents are fake. These are the same documents that were used in the Houston, Texas case. |
| Article Information sheet | This is a real document, but is publicly available and does not prove authenticity. |
| Blamis email confirming that Blamis is a 3M Distributor for masks. | Blamis is an authorized distributor for 3M Food Safety. They do not have access to surgical respirators like the Model 1860/1860S |
| Med-Tech Resource Email | The process described is false. 3M does not work with trading companies. They only work with authorized dealers. 3M does not ship product to Hong Kong and then back to the U.S. |
| SGS Report – an independent inspection report | These types of certification reports do not confirm authenticity of 3M respirators, as SGS has never been trained to authenticate 3M respirators. |
| Zhen Qi Letter allowing Zhen to sell and distribute certified 3M masks | Zhen Qi has no authority or ability to authenticate 3M respirators |

| Document Description | 3M Response |
| --- | --- |
| Summary Information 3M Direct – reflecting the shipment process and trail. | This document is fake and does not reflect 3M practices. 3M does not manufacture respirators in Vancouver, BC. We do not ship to Hong Kong and then have them shipped back to the U.S. |
| Certificate of Lot Conformance | This is a fake document. |
| Authorized Distributor – A letter from 3M showing that Blamis imported the masks from the 3M plant directly. | This is a completely fabricated document. 3M does not have any such document. |
| EMS Invoice – reflecting prices per mask of $2.90 or $3.25. | The list price for 1860/1860S is $1.27. The prices on the EMS Invoice are higher. |

## APPLICABLE STATUTES

17.  18 U.S.C. § 2320 makes it a crime to traffic in goods bearing a counterfeit trademark.

18.  18 U.S.C. § 1343 makes it a crime to use the wires to execute any scheme to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

19.  18 U.S.C. § 981(a)(1)(C) provides for the civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)."

20.  18 U.S.C. § 2320 (trafficking in counterfeit goods) and 18 U.S.C. § 1343 (wire fraud) are "specified unlawful activit[ies]" under 18 U.S.C. § 1956(c)(7)(A), which incorporates 18 U.S.C. § 1961(1)(racketeering activities).

21.  18 U.S.C. § 2323 provides for the forfeiture of "[a]ny property constituting or derived from any proceeds obtained directly or indirectly" as a result of a violation of 18 U.S.C. § 2320 (trafficking in counterfeit goods).

22.     18 U.S.C. § 984 provides that funds deposited in an account in a financial institution that are found in the same account as the property involved in the offense that is the basis for the forfeiture are subject to forfeiture so long as the action is commenced within one year from the date of the offense.

## CONCLUSION

WHEREFORE, the plaintiff respectfully asserts that there is probable cause to believe that the defendant *in rem* is forfeitable to the United States and asks that all persons who reasonably appear to be potential claimants with interests in the defendant *in rem* be cited to appear herein and answer the complaint; that the defendant *in rem* be forfeited and condemned to the United States of America; that upon Final Decree of Forfeiture, the Secretary of the Treasury dispose of the defendant *in rem* according to law; and that the plaintiff has such other and further relief as this Court deems proper and just.

Dated at Portland, Maine this 14th day of May, 2021.

Respectfully submitted,

DONALD E. CLARK
Acting United States Attorney

/s/ Donald E. Clark
Donald E. Clark
Acting United States Attorney
Danial J. Perry
Assistant U.S. Attorney

VERIFICATION

Joel Braillard, being duly sworn, deposes and says that I am a Special Agent with Homeland Security Investigations, U.S. Department of Homeland Security, and as such have responsibility for the within action, that I have read the foregoing complaint and know the contents thereof, and that the same is true to the best of my knowledge, information and belief.

The sources of my information and the grounds of my belief are official records and files of the United States and information obtained by me during an investigation of alleged violations of Title 18, United States Code.

Joel Braillard
Special Agent
U.S. Department of Homeland Security

STATE OF MAINE
Cumberland, ss.

Subscribed and sworn to before me this 14th day of May, 2021.

Notary Public
My commission expires:

Melissa Bubar
Notary Public, State of Maine
Commission Expires July 13, 2027